UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DENNIS MANSKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00320-JAW |
| | ) | |
| UPS CARTAGE SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON OBJECTION TO MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION**

UPS Cartage Services, Inc. (UPS)[1] objects to Magistrate Judge Rich's denial of its motion to reconsider his order granting the Plaintiff, Dennis Manske, a limited protective order. Because UPS has failed to demonstrate that the Magistrate Judge's decision is clearly erroneous or contrary to law, the Court overrules its objection.

**I. BACKGROUND**

In this employment action against UPS, Mr. Manske moved on November 30, 2010 for a limited protective order, seeking to delay production of recorded conversations with potential witnesses (the recordings) that he taped in anticipation of litigation. *Pl.'s Mot. for a Limited Protective Order* (Docket # 12) (*Pl.'s Mot.*). He argued that the recordings are protected from discovery under the work product doctrine and should be withheld until after the recorded witnesses have been

---

[1] At the time the motion was filed, an additional party was joined as a defendant. That party was dismissed by stipulation while the motion was pending. *Stipulation of Partial Dismissal* (Docket # 33). UPS Cartage Services, Inc. is the only remaining defendant.

deposed to allow him to "obtain an honest and unrefreshed recollection from the relevant witnesses." *Id.* at 4. On December 16, 2010, UPS responded, arguing that the recordings do not qualify as work product, that they are in any event excepted from the work product doctrine as previous statements of a party pursuant to Rule 26(b)(3)(C), and that Mr. Manske had failed to show good cause for delaying production. *Defs.' Opp'n to Pl.'s Mot. for a Limited Protective Order* (Docket # 13) (*Def.'s Opp'n*) (citing FED. R. CIV. P. 26(b)(3)(C)). Mr. Manske replied on December 30, 2010, arguing that, even where the rules demand production of the previous statements of a party, the Court maintains discretion to delay the production. *Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for a Limited Protective Order* at 3-4 (Docket # 15) (*Pl.'s Reply*). He further contended that the case law supported delaying production. *Id.* at 4-7.

On January 30, 2011, Judge Rich granted Mr. Manske's motion. *Mem. Decision on Mot. for Limited Protective Order* (Docket # 18) (*Order*). He ordered that

> 1. The plaintiff shall immediately provide the defendants with a list of the individuals whose conversations or statements were tape-recorded and the dates of each such recording.
>
> 2. The recording of each individual shall be produced to the defendants and the recorded individual immediately after the completion of that individual's deposition. If no deposition of a particular individual who was tape-recorded is scheduled within 60 days following the date of this order, the recording of that individual shall be produced to the defendants on the 61st day.

*Id.* at 6. In coming to this decision, Judge Rich analyzed the case law cited by the parties. *Id.* at 2-6. Judge Rich observed that, in determining whether to delay

2

production of parties' prior statements in recorded evidence, courts tend to analyze whether evidence is likely to be more valuable as substantive or impeachment evidence. *Id*. He concluded that courts tend to demand an item's immediate production when its substantive evidentiary value outweighs its impeachment value but tend to allow delayed production when the impeachment value outweighs the substantive value. *Id.*

Judge Rich found it difficult to apply that reasoning to the pending dispute because there was insufficient information to assess whether the recordings "will be used solely for impeachment or as substantive evidence as well." *Id*. at 3. Similarly, he said he could not determine whether the recordings included previous statements of a party because there was insufficient information to analyze whether "some or even all of [the recorded] employees may be able to bind one of the corporate defendants by his or her statements." *Id*. With the information before him, Judge Rich adopted Magistrate Judge Kravchuk's solution in a similar case. Citing *Gerber v. Down East Community Hospital*, 266 F.R.D. 29 (D. Me. 2010), Judge Rich found that "production of the tape recordings, even if they could be considered to include statements against interest by one of the defendants, should not be required before the deposition of each of the recorded individuals is taken." *Id*. at 5-6. He added that "[o]nce the plaintiff has produced the names of these individuals, the defendants are presumably capable of interviewing them before their depositions take place." *Id*. at 6.

3

On February 7, 2011, UPS moved for reconsideration of the limited protective order. *Defs.' Mot for Reconsideration* (Docket # 19) (*Defs.' Mot.*). It asserted that Judge Rich failed to address its argument that the work product doctrine does not apply, that he overlooked indications that Mr. Manske intends to use the recordings as substantive evidence, and that he erred in rejecting UPS's argument that the recordings are statements of a party. *Id.* at 6-10. On February 10, 2011, Mr. Manske responded. *Pl.'s Opp'n to Defs.' Mot. for Reconsideration* (Docket # 20) (*Pl.'s Opp'n*). He reasserted that the recordings are protected by the work product doctrine. *Id.* at 2-4. He further contended that Judge Rich's decision found delaying production appropriate regardless of whether the recordings include previous statements of a party. *Id.* at 4-5. Finally, he asserted that he had no intention to use the recordings as substantive evidence but their impeachment value must be maintained. *Id.* at 5-6.

On February 24, 2011, Judge Rich denied UPS's motion for reconsideration. *Mem. Decision on Mot. for Reconsideration* (Docket # 28) (*Reconsideration Order*). He noted that the only "material change of relevance" that occurred since he issued the initial order was Mr. Manske's disclosure "that there are tape recordings of only two individuals; both are described by the defendants as management employees and presumably could bind the defendants by their statements." *Id.* at 1. However, he reiterated his decision that production "should not be required before the deposition of each of the recorded individuals is taken." *Id.* Moreover, he clarified that his decision did not turn on whether the recordings are work product but was

4

based on Mr. Manske's representations that the recordings "will be most relevant and valuable as impeachment evidence." *Id.* at 2 (quoting *Pl.'s Opp'n* at 5).

On March 9, 2011, UPS appealed Judge Rich's decision to this Court and requested oral argument. *Defs.' Objection to Feb. 24, 2011 Order* (Docket # 30) (*Defs.' Objection*) *Defs' Request for Oral Argument* (Docket # 31). It argued that Judge Rich erred by issuing a protective order without finding that Mr. Manske had shown good cause for delayed production or whether the recordings are work product. *Id.* at 3-7. UPS further contended that Judge Rich erred by allowing Mr. Manske to withhold previous statements of a party. *Id.* at 7-9. Finally, it asserted that Judge Rich improperly credited Mr. Manske's assertion that the recordings are impeachment evidence without independently analyzing the substantive value of the evidence. *Id.* at 9-10. On March 28, 2011, Mr. Manske rebutted each of UPS's objections. *Pl.'s Opp'n to Defs.' Objection to the Court's Feb. 24, 2011 Decision on Mot. for Protective Order* (Docket # 32) (*Pl.'s Opp'n to Objection*). Specifically, he asserted that the work product and 26(b)(3)(C) issues are not dispositive and that he had demonstrated good cause for delayed production by explaining the impeachment value of the recordings. *Id.* at 5-10.

## II.  DISCUSSION

### A.  Standard of Review

When a party objects to a nondispositive order of a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P.

72(a). Factual findings are reviewed under the "clearly erroneous" branch. *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999). That means the Court "must accept both the [magistrate]'s findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the Court] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Id*. When "review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of Rule 72(a)." *Powershare v. Syntel, Inc.* 597 F.3d 10, 15 (1st Cir. 2010).

B. Analysis

The Court has little difficulty concluding that Judge Rich's decision is neither clearly erroneous nor contrary to law. Rule 26(c) authorizes the court to "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (B) specifying terms, including time and place, for the disclosure or discovery." FED. R. CIV. P. 26(c)(1). In addition, trial court's have general discretion over the sequence of discovery. Rule 26(d) authorizes trial courts, upon motion, to sequence discovery for convenience and in the interests of justice. FED. R. CIV. P. 26(d).

Significantly, Judge Rich merely ordered production of the recordings delayed; he did not order the recordings withheld. Accordingly, UPS's assertion that the recordings must be produced because they are previous statements of a party is a strawman. *See Order* at 6 and *Reconsideration Decision* at 2. Rule 26(b)(3)(C) does not entitle parties to immediate discovery of their previous

statements. Indeed, courts have held in similar cases "that a party should be given a copy of his or her own statement but that the production of the statement may be delayed until after the party's deposition has been taken by the opponent." 8 C. Wright, A. Miller, M. Kane, L. Marcus, FED. PRAC. & PROC. § 2027 (3d ed.) [hereinafter Wright & Miller] (citing *Casella v. Hugh O'Kane Elec. Co.,* No. 00 Civ. 2481 LAK, 2000 WL 1649513 (S.D.N.Y. Nov. 2, 2000); *Torres–Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal. 1994); *Nelson v. Puerto Rico Marine Mgmt., Inc.*, 72 F.R.D. 637 (D. Md. 1976); and *Smith v. China Merchants Steam Nav. Co. Ltd.*, 59 F.R.D. 178 (E.D. Pa. 1972)). "Rule 26(b)(3) does not preclude such a procedure. The court has ample power under Rule 26(c)(2) to issue a protective order postponing the production." *Id.* Accordingly, Judge Rich did not err in determining that this dispute does not hinge on whether the recordings include previous statements of a party. *Order* at 6; *Reconsideration Order* at 1-2.

Untethered to a mandate requiring immediate production of the recordings, Judge Rich balanced the interests of the parties and crafted a solution that takes both parties' interests into account. While allowing delay of the recordings to preserve their impeachment value, he required that Mr. Manske immediately provide UPS "with a list of the individuals whose conversations or statements were tape-recorded and the dates of each such recording." *Order* at 6. From that information, UPS may interview the recorded witnesses and obtain the substantive evidence they seek from the tape recordings. If the eventual release of the recordings reveals evidence not obtained from witness interviews, UPS will have an

7

opportunity to depose the witnesses and attempt to reconcile the inconsistencies and rehabilitate the witnesses' credibility. There is no risk that UPS will be surprised by the recordings at trial. *Boldt v. Sanders*, 111 N.W.2d 225, 227 (Minn. 1961) (discussing the danger of disclosing impeachment evidence for the first time in the courtroom); *see also* 8 Wright & Miller § 2015 (3d ed.) (citing *Boldt v. Sanders* as providing "the most comprehensive statement for the case for discovery of information of this kind").

In contrast to the lack of prejudice to UPS, Judge Rich recognized the value of impeachment evidence to Mr. Manske. There is no error in this determination. In employment cases, where shifting explanations for adverse employment action may evince retaliatory motive, preventing management witnesses from tailoring their testimony to prior comments is of particular importance to a plaintiff's case. *See E.C. Waste, Inc. v. N.L.R.B.*, 359 F.3d 36, 45 (1st Cir. 2004) (finding that "an employer's shifting explanations for discharging an employee may themselves serve either to ground or to reinforce a finding of pretext"). Preserving the impeachment value of prior statements is good cause for a limited protective order. As Judge Rich explained in his denial of UPS's motion for reconsideration, he was able to find good cause without determining whether the recordings are work product. *Reconsideration Order* at 2. Such a determination could only alter the decision by providing independently sufficient grounds for delaying, or even withholding, production of the recordings.

Courts have widely determined that delaying production until after depositions is the preferred solution when evidence could potentially have both substantive and impeachment value. Wright & Miller characterizes this as "a better solution" than immediate discovery or allowing a party to withhold the evidence. 8 Wright & Miller § 2015. Wright & Miller quotes a "leading commentator" who reasons as follows:

> The values of surprise could be largely preserved by providing discovery or pretrial revelation of impeachment material which falls within the present category only at a time shortly before trial, and only after the party asked about the existence and nature of such material had been given an opportunity—ordinarily by deposition—to commit the inquiring party to a final version of the events and claims related to the impeachment material. This procedure should forestall most conforming testimony, and would afford a reasonably effective means of embarrassing those who might still attempt to meet the impeaching material in untruthful ways. At the same time, it would be possible to prepare to meet impeaching material which is susceptible of honest explanation or refutation. Having preserved the values of surprise, there would be no remaining reasons to deny discovery . . . .

*Id.* "Courts have repeatedly adopted this solution." *Id.* (citing *Donovan v. AXA Equitable Life Ins. Co*, 252 F.R.D. 82 (D. Mass. 2008); *Hildebrand v. Wal-Mart Stores, Inc.*, 194 F.R.D. 432 (D. Conn. 2000); *Walls v. Intern. Paper Co.*, 192 F.R.D. 294 (D. Kan. 2000); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C. 1993); and *Ward v. CSX Transp. Inc.*, 161 F.R.D. 38 (E.D.N.C. 1995)). Although UPS cites cases in which courts rejected this solution, *Defs.' Objection* at 9-10, a degree of inconsistency merely confirms the discretionary nature of a trial court's rulings in such matters and the imperative to resolve discovery disputes

based on the specific circumstances of the case. UPS points to no binding authority that could warrant a finding that Judge Rich's decision was contrary to law.

More convincing than UPS's citations to other district court decisions is Judge Rich's citation to *Gerber*. *Order* at 5-6. By following Judge Kravchuk in *Gerber*, Judge Rich facilitated consistency within the District. The Court accepts Judge Rich's analysis of *Gerber* in his original order, *see Order* at 4-6, and does not need to expound further. UPS's attempts to distinguish *Gerber* rely exclusively on the work product and 26(b)(3)(C) issues. *Defs.' Mot* at 5-6; *Defs.' Objection* at 7-9. Since the protective order deals with the timing of discovery rather than the ultimate decision to produce discovery material, those issues are not dispositive.

Finally, because the Court readily concludes that Judge Rich acted within his discretion in granting the limited protective order, because the parties have had ample opportunity to brief this issue, and because it is not in the interest of the parties or the Court to further delay this litigation over a discovery dispute, the Court denies UPS's motion for oral argument.

## III.  CONCLUSION

Because the Court concludes that Judge Rich's decision was not clearly erroneous or contrary to law, it OVERRULES the Defendants' Objection to the February 24, 2011 Order (Docket # 30). The Court DENIES the Defendants' Request for Oral Argument (Docket # 31).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of June, 2011